UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| RANA AL-TURKI and GYMBOREE PLAY & LEARN KSA, | ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | 4:12-cv-30-RLY-TAB |
| SANDRA AL-AJMI KLOPP, | ) ) | |
| Defendant. | ) | |

**ENTRY ON SANDRA AL-AJMI'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

On March 20, 2012, plaintiffs, Rana Al-Turki ("Al-Turki") and Gymboree Play & Learn KSA located in Al Khobar, Saudi Arabia ("Gymboree Al Khobar") (collectively "Plaintiffs"), filed their Amended Complaint asserting three state-law claims against defendant, Sandra Al-Ajm (incorrectly denominated "Sandra Al-Ajmi Klopp") (hereinafter "Al-Ajmi"): defamation (Count I); defamation per se (Count II); and tortious interference with contractual relations (Count III).

The court's jurisdiction is premised on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(2). Plaintiffs are citizens of the sovereign state of Saudi Arabia; Plaintiffs identify Indiana as Al-Ajmi's state of citizenship. Al-Ajmi contends that she is not a citizen of Indiana for purposes of diversity jurisdiction; instead, her domicile is in the Kingdom of Bahrain. Al-Ajmi therefore moves to dismiss Plaintiff's Amended Complaint for lack of subject matter jurisdiction. For the reasons set forth below, the

1

motion is **GRANTED**.

I.     **Dismissal Standard**

Federal Rule of Civil Procedure 12(b)(1) requires the court to dismiss an action for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). When deciding a Rule 12(b)(1) motion, the court "must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995) (citing *Rueth v. EPA*, 13 F.3d 227, 229 (7th Cir. 1993)). The court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id*. As the party asserting jurisdiction, Plaintiffs must establish subject matter jurisdiction by a preponderance of the evidence. *Craig v. Ontario Corp.*, 543 F.3d 872, 876 (7th Cir. 2008); *LM Ins. Corp. v. Spaulding Enterprises, Inc.*, 533 F.3d 542, 547 (7th Cir. 2008). With this standard in mind, the court now turns to the facts.

II.    **Factual Background**

       a.     **Ties to Indiana and the Middle East**

1.  Al-Ajmi was born in Frenchburg, Kentucky, but maintains dual citizenship with the United States and the State of Kuwait ("Kuwait"). (Affidavit of Sandra Al-Ajmi ("Al-Ajmi Aff.") ¶ 3).

2.  Al-Ajmi has a valid Kuwaiti passport and a Kuwaiti Civil ID Card. (*Id*. ¶ 10).

3.  Al-Ajmi is also a permanent resident of Bahrain and possesses a Central Population Registration Card, which is only issued to residents of Bahrain. (*Id*.).

4. Al-Ajmi married Fahed Al-Ajmi ("Fahed") in 1975 and moved to Kuwait in 1977, where she resided until 1999. (Deposition of Sandra Al-Ajmi ("Al-Ajmi Dep.") at 11, 26; Al-Ajmi Aff. ¶ 4). They are now divorced. (Al-Ajmi Dep. at 26, 62, 98).

5. Al-Ajmi has three sons – Nasser (34), Nadder (27), and Nawaf (25) – and one daughter, Aisha (29). Nasser (and his children) and Nawaf live in Kuwait; Nadder lives in Indiana (see below); and Aisha "occasionally" lives with Al-Ajmi in Bahrain. (*Id.* at 20, 68, 90-92). Aisha's children live with Ali Abdulaziz Al-Turki ("Ali"), their father and Aisha's ex-husband,[1] in Saudi Arabia. (Affidavit of Abdulaziz Ali Turki ¶ 30).

6. Between 1999 and July 2006, Al-Ajmi worked in Oklahoma, Indiana, and Kentucky. (Al-Ajmi Aff. ¶ 9).

7. Al-Ajmi moved back to the Middle East in 2006, and became a permanent resident of Bahrain in 2007. (*Id.* ¶ 4; Al-Ajmi Dep. at 8).

8. Al-Ajmi married William Klopp ("Klopp") on July 17, 2006, on the Island of Pafos, Cyprus. (Al-Ajmi Dep. at 9; Al-Ajmi Aff. ¶ 7; Plaintiffs' Ex. 11). Her marriage license lists both Al-Ajmi and Klopp as permanent residents of the United States. (Plaintiffs' Ex. 11).

9. In 1997, Al-Ajmi and then-husband Fahed purchased the property at 20492 Matterhorn Drive, Lawrenceberg, Indiana ("Matterhorn Home") as a summer

---

[1] Aisha and Ali were divorced in Saudi Arabia in 2011, and are in the midst of a custody battle. (Al-Ajmi Aff. ¶ 13). Plaintiff, Rana Al-Turki, is Ali's sister. (*Id.*).

3

vacation home. (Al-Ajmi Dep. at 62). Klopp moved into the Matterhorn Home in 2007. (Al-Ajmi Aff. ¶ 7).

10. Klopp, Nadder, and Nadder's young son, Christian, currently reside there. (*Id.*; Al-Ajmi Dep. at 90-92).

11. Al-Ajmi's mother and brother live in Ohio, approximately 50 miles from the Matterhorn Home. (*Id.* at 131).

12. Al-Ajmi rents an apartment in Bahrain. (Al-Ajmi Aff. ¶ 4). She testified she intends to remain living in Bahrain for the foreseeable future. (*Id.*).

### A. Additional Ties to Bahrain

13. In Bahrain, Al-Ajmi owns 1/3 interest in, and serves as the Director for, The Learning Tree Kindergarten and PreSchool (f/k/a The Creative Academy for Kids) (hereinafter "The Learning Tree"). (*Id.* ¶ 5). She has held that position since 2008, and was under an employment contract through at least September 2012. (*Id.*). There is no evidence in the record reflecting a change in her employment status as of September 2012.

14. Al-Ajmi receives a nominal salary from The Learning Tree. (Al-Ajmi Dep. at 24-25). In addition, The Learning Tree pays for her utilities. (*Id.* at 40).

15. Over the last four years, Al-Ajmi has spent on average more than 9 months per year in Bahrain. (*Id.* ¶ 8). She visits her husband and family in Indiana when her schedule permits. These visits generally occur when there is a break in The Learning Tree's calendar. (*Id.*).

16. In 2009, Al-Ajmi co-founded a consortium of heads of schools called "Professional Kindergarten/Preschool Network Alliance Group" and she serves as a mentor for the Royal University of Women in Bahrain. (*Id*. ¶ 6). More recently, in February 2012, she was also asked to participate in the Schools Review Unit Annual Forum with the Ministry of Education and Quality Assurance Committee in Bahrain. (*Id*.).

17. Al-Ajmi has a savings account with the Bank of Bahrain and Kuwait ("BBK"), and is the signatory on The Learning Tree's corporate checking account at BBK. (*Id*. ¶ 12). Both accounts were opened in 2008. (*Id.*).

18. Al-Ajmi drives an GMC Envoy SUV purchased by Nasser. (Al-Ajmi Dep. at 64). She testified that because Bahrain recognizes her Indiana driver's license, she does not need one from Bahrain. (*Id*. at 63).

19. Al-Ajmi's ex-son-in-law, Ali, paid her rent in Bahrain from 2009-2011. (*Id*.).

20. Her son, Nasser, currently supplements her income. (*Id*. at 20). Nasser pays taxes on her housing in Bahrain on her behalf; The Learning Tree pays her monthly employment tax in Bahrain; and Al-Ajmi's ex-husband pays taxes to the Kuwaiti government on her behalf. (*Id*. at 26-28).

    **B.   Additional Ties to Indiana**

21. Al-Ajmi is not registered to vote in Indiana. (Al-Ajmi Aff. ¶ 11).

22. Al-Ajmi files taxes in the United States jointly with her husband. (Al-Ajmi Dep. at 22; Plaintiffs' Exs. 3-7). She does not declare income from The Learning Tree

because she does not consider what little she makes a "salary." (*Id.* at 24-25).

23. With respect to her and Klopp's joint returns for the State of Indiana for tax years 2007-2011, they use Form IT-40, which is specifically for "Indiana Full-Year Residents." (Plaintiffs' Exs. 3-7). Al-Ajmi claimed her son, Nadder, as a dependent on her federal income tax returns. (*Id.*).

24. Al-Ajmi and Klopp refinanced their mortgage for the Matterhorn Home in early 2012. Beside the heading "Intended Use of the Property," they represented "Primary Residence." (Plaintiffs' Ex. 14). Additional documents related to their mortgage also state that the Matterhorn Home is their principal residence and/or principal dwelling. (*See, e.g.*, Plaintiffs' Exs. 18-19).

25. In loan documents from the December 30, 2009 purchase of a 2010 Cadillac SRX, Al Ajmi made similar representations concerning the Matterhorn Home. (Plaintiffs' Ex. 22). The vehicle is registered to both Al-Ajmi and Klopp. (Plaintiffs' Ex. 21).

26. Al-Ajmi holds 7 bank accounts in the United States; two individually, three jointly with Klopp, and two jointly with Nadder. (Plaintiffs' Exs. 24-29).

27. She has also taken out credit lines with Chase Mastercard, National Education Association Bank of America Visa, Macy's Department Store, another Bank of America Visa, and Dell Computers.

28. Al-Ajmi is a member of the American Association of Retired People ("AARP"). (Plaintiffs' Ex. 31).

## III. Discussion

Chapter 28 U.S.C. § 1332(a)(2) provides for original jurisdiction in the federal district court over claims between "citizens of a State and citizens or subjects of a foreign state." Since Al-Turki's and Gymboree Al Khobar's status as subjects of a foreign state is undisputed, only Al-Ajmi's status is at issue. While Al-Ajmi is a citizen of the United States, in order to invoke diversity jurisdiction, she must also be domiciled within a state. *Newman-Green v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989). "A United States citizen who has a foreign domicile is considered 'stateless' for purposes of § 1332(a) and may not invoke diversity jurisdiction." *Newell v. O&K Steel Corp.*, 42 Fed. Appx. 830, 832-33 (7th Cir. 2002) (citing *Newman-Green*, 490 U.S. at 828)).

"Jurisdiction depends on one's domicile at the time the case begins." *Denlinger v. Brennan*, 87 F.3d 214, 216 (7th Cir. 1996) (citation omitted). Domicile has two elements: (1) physical presence in a state and (2) an intent to remain in the state. *Id*. Although an individual may have two residences in two different states, he or she may only have one domicile. 13E Wright, Miller & Cooper, Federal Practice & Procedure, § 3612 (2010). In ascertaining whether an individual has established an intent to stay indefinitely, a court balances and weighs a variety of factors.

> Factors frequently taken into account include: the party's current residence; voter registration and voting practices; situs of personal and real property; location of brokerage and bank accounts; membership in unions, fraternal organizations, churches, clubs, and other associations; place of employment or business; driver's license and automobile registration; payment of taxes; as well as several other aspects of human life and activity.

7

*Id.*; *see also Newell*, 42 Fed.Appx. at 833 (citing Federal Practice & Procedure § 3612); *New Tamid Congregation of N. Town v. Krivoruchko*, 620 F.Supp.2d 924, 931-32 (N.D. Ill. 2009) (citing Federal Practice & Procedure § 3612). No single factor is dispositive; instead, one's domicile is a legal conclusion based upon the totality of the circumstances. *Newell*, 42 Fed.Appx. at 833 (citing *Galva Foundry Co. v. Heiden*, 924 F.2d 729, 730 (7th Cir. 1991)).

The evidence establishes that Al-Ajmi became a permanent resident of Bahrain in 2007, has worked there since at least 2008, and intends to remain in Bahrain for the foreseeable future. She spends the majority of her time – more than nine months out of the year – in Bahrain, and visits her family in Lawrenceburg, Indiana, when The Learning Center's schedule allows. She is responsible for housing and employment taxes in Bahrain and is active in the educational community there. Whether, as Plaintiffs point out, Al-Ajmi's taxes abroad are paid by others, and whether her income in Bahrain is supplemented by her son, is irrelevant to the jurisdictional inquiry, and does not negate the fact that the payment of these obligations is ultimately her responsibility.

Notwithstanding Al-Ajmi's presence in Bahrain and stated intent to remain there for the foreseeable future, Plaintiffs contend that Lawrenceburg, Indiana, is Al-Ajmi's domicile. In support of their contention, they rely on the following evidence: (1) Al-Ajmi's sole real property is located in Lawrenceburg, Indiana – i.e., the Matterhorn Home; (2) Al-Ajmi's husband (Klopp), son (Nadder), and grandson (Christian), live in the Matterhorn Home; (3) she maintains a current Indiana driver's license which lists her

8

residence as the Matterhorn Home; (4) she jointly owns a vehicle registered at the Matterhorn Home address; (5) she is a member of the AARP; (6) she maintains bank accounts in the United States; (7) she files her taxes in the United States jointly with Klopp and lists her residence as the Matterhorn Home address; (8) she claimed Nadder as a dependent on her federal income taxes; and (9) she listed the Matterhorn Home as her primary residence on documents associated with the refinance of the home and on loan documents associated with her recent car purchase.

The first six facts cited by Plaintiffs in support of their motion are counterbalanced by Al-Ajmi's facts, some of which the court has already touched upon. For example, while Al-Ajmi jointly owns a home and a vehicle with her husband in Lawrenceburg, she also maintains an apartment and a vehicle in Bahrain. The fact that Al-Ajmi keeps her Indiana driver's license current is not conclusive evidence of domicile, in light of the fact that the Kingdom of Bahrain recognizes American driver's licenses as legal and valid. Second, while Al-Ajmi maintains bank accounts in the United States, she also maintains bank accounts in Bahrain. Third, while her husband, son, and grandson live in the Matterhorn Home, her other sons (Nasser and Nawaf) live in Kuwait, her other grandchildren live in Kuwait, and her daughter (Aisha) occasionally lives with her in Bahrain. Lastly, while Al-Ajmi is a member of the AARP in the United States, she is also affiliated with the educational community in Bahrain.

With respect to the issue of United States taxes, Plaintiffs are critical of the fact that Al-Ajmi files joint tax returns (federal and Indiana) with Klopp. Plaintiffs are also

critical of the tax forms utilized by Al-Ajmi and Klopp, noting, for example, that they never used the relevant form for couples filing jointly where one spouse claims to live abroad.

Al-Ajmi testified that she is not involved in the preparation of the joint tax return, has not sought tax advice, and does not have a good understanding of United States tax laws. (Al-Ajmi Dep. at 95-96). She also testified that when she visits the Matterhorn Home, Klopp typically has a stack of documents for her to sign. She assumes they are accurate and legal and does not "bother, really, to double-check them." (*Id*. at 96). Klopp's testimony corroborates Al-Ajmi, noting that she does not participate in tax preparation at all. (Deposition of William Klopp at 27). He also stated he was unfamiliar with the different returns that are available to taxpayers and noted that some of the information in the return was inaccurate and likely the result of an inadvertent carryover of information from prior years. (*Id*. at 29-31). And, as Plaintiffs acknowledge, although Al-Ajmi files joint tax returns in the United States, she does not pay income tax in the United States on her salary from Bahrain.

On a related note, Plaintiffs argue that Al-Ajmi consistently represented in tax documents, loan documents, and the like that her primary residence is the Matterhorn Home address. To the extent Plaintiffs' argument implies Al-Ajmi should be estopped from contesting Indiana as her domicile, Plaintiffs are mistaken. Diversity is a jurisdictional requirement, and cannot be acquired by estoppel or "the aura of fraud." *See Galva*, 924 F.3d at 730 (Illinois resident's listing of Florida address on both state and

federal taxes for tax advantage did not effect change in domicile; "shady business" cannot effect change in domicile). This same concept applies equally to Plaintiffs' statements implying that Al-Ajmi misrepresented herself on her state and federal tax forms in order to obtain a tax benefit.

The court concludes, based upon the totality of the evidence, that Plaintiffs have failed to establish, by a preponderance of the evidence, that Al-Ajmi was domiciled in Indiana at the time this case was filed. Because this lawsuit is between citizens of a foreign state and a "stateless" United States citizen, the court does not have diversity jurisdiction.

## IV.   Conclusion

For the reasons stated above, the court **GRANTS** Al-Ajmi's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Docket # 23).


**SO ORDERED** this  27th   day of February 2013.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana


Distributed Electronically to All Counsel of Record.